UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WILFRED C. RODRIGUEZ,

                           **Plaintiff,**

       -against-

GLOBE INSTITUTE OF TECHNOLOGY,

                          **Defendant.**

-----------------------------------------------------------------X

**15-CV-1435 (RA)(SN)**

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS:**

      On October 22, 2015, the Honorable Ronnie Abrams entered a default for the plaintiff Wilfred C. Rodriguez against defendant Globe Institute of Technology. This case was referred to my docket to conduct an inquest and to report and recommend concerning the plaintiff's damages. The plaintiff submitted Proposed Findings of Fact and Conclusions of Law in support of damages on February 4, 2016, seeking a total award of $107,204.32, to which the defendant failed to respond. Because the plaintiff has provided a sufficient basis on which to award damages, and the Court finds it appropriate to award attorney's fees—albeit with some reductions to each—the Court recommends a total award in the amount of $86,234.61.

## BACKGROUND

      The plaintiff Wilfred C. Rodriguez ("Rodriguez") brought this action on February 26, 2015, alleging claims against defendant Globe Institute of Technology ("GIT") for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York State Labor Law, N.Y. Lab. Law § 650 *et seq.* ("NYLL"), to recover unpaid overtime wages as well as

liquidated damages, attorney's fees and costs. GIT did not answer or otherwise appear in this action. On October 22, 2015, the District Court held a Show Cause Hearing and ordered that a judgment be entered for Rodriguez in an amount to be determined by an inquest for damages.

Accordingly, on December 18, 2015, this case was referred to me to report and recommend on the plaintiff's damages submission. On February 4, 2016, Rodriguez submitted his Proposed Findings of Fact and Conclusions of Law in support of damages, along with an affidavit of the plaintiff and various exhibits. GIT did not file a response. The Court held an evidentiary hearing on July 11, 2016, at which Rodriguez testified.

## DISCUSSION

### I. Legal Standard

The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in City of New York v. Mickalis Pawn Shop, LLC:

> Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973

F.2d 155, 158 (2d Cir. 1992)). "[E]ven after [a] default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y 2000) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688, at 63 (3d ed. 1988)). Where plaintiff's well-pleaded facts are sufficient to state a claim on which relief can be granted, the only remaining issue in an inquest is whether plaintiff has provided adequate support for its requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim th[r]ough the submission of evidence. . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount, if any, a plaintiff is entitled to recover without holding a hearing as long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, and Transatlantic Marine Claims Agency Inc., 109 F.3d at 111).

## II. Liability

### A. Facts Related to Liability

The following facts are established by the allegations in the complaint, which are deemed admitted except to the extent they concern the amount of damages, the plaintiff's admissible evidence submitted for this inquest, and the record of the evidentiary hearing.

On or around August 23, 2012, Rodriguez began working for GIT as an admissions representative, where he recruited potential students. (Compl. ¶ 16, 17.) In support of his

3

Proposed Findings of Fact and Conclusions of Law, Rodriguez submitted an affidavit stating that he started working at GIT on April 25, 2012. At the hearing, he testified that his wife reminded him that his start date was in April and not August. (Hearing Trans. 5:9–16.) But Rodriguez pleaded in his complaint that he started working at GIT in August 2012, and no records support an April start date. (Compl. ¶ 16.) Accordingly, the Court finds that his appropriate start date, for purposes of this inquest, is August 23, 2012. Rodriguez regularly worked Monday through Friday from 9 a.m. until 7 p.m. From August 2012 until November 2013, he was paid an hourly rate of approximately $24.40. In November 2013, Rodriguez's rate of pay increased to $26.44 an hour. GIT terminated his employment on August 3, 2014. (Ex. I, ¶ 3.)

At the time Rodriguez was hired, he was not provided notice regarding his rights under federal or state overtime laws. (Compl. ¶¶ 25.) He recalls at least three instances throughout his time of employment when he asked a supervisor whether he should receive overtime compensation for hours worked above 40 per week. (Hearing Trans. 14:17–15:8.) His supervisors either told him that they would "take care of it" or, simply, "we don't pay overtime." (Compl. ¶ 26; Hearing Trans. 14:17–15:8.)

Rodriguez estimates that he was not paid for 833 hours of overtime. (Rodriguez Aff. ¶ 5.) Of those hours, he approximates 539 hours were at an hourly rate of $24.40 ($19,727.40) and 294 hours were at an hourly rate of $26.44 ($11.660.04), totaling $31,387.44 in back wages. (Rodriguez Aff. ¶ 8.)

The complaint alleges that GIT's violations of FLSA and NYLL were "willful" and not performed in "good faith." (Compl. ¶ 30–31.) The complaint additionally asserts claims for spread of hours pay, statutory damages, liquidated damages (under both the FLSA and NYLL), attorney's fees and filing costs. (Compl. ¶ 42–47.)

B.   **Statute of Limitation**

The applicable statutes of limitations for wage and hour claims are six years under the NYLL and two years under the FLSA. N.Y. Lab. Law § 663(3); 29 U.S.C. § 255(a). But if an employer's acts are deemed to be "willful," the statute of limitations under the FLSA increases to three years. 29 U.S.C. § 255(a). A plaintiff's allegations of willful violation will be taken as true by virtue of a defendant's default. Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049 (NSR)(PED), 2015 WL 3855285, at *5 (S.D.N.Y. June 19, 2015). A cause of action arising out of the FLSA and NYLL "accrues on the next regular payday following the work period when services are rendered." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 198 (2d Cir. 2013).

Rodriguez filed his claims pursuant to the FLSA and NYLL on February 26, 2015. He alleges that GIT's failure to pay was "intentional or willful." Rodriguez may recover for damages arising out of his employment with GIT going back six years under NYLL, and three years for damages arising out of the FLSA. Because all of Rodriguez's claims arise from August 23, 2012, until August 3, 2014, they fall within the statutes of limitations.

### III.   Damages

A.   **Unpaid Overtime Wages**

An employee who brings an action under the FLSA for unpaid overtime must prove that he performed the work and that he was not compensated properly for his time. Grochowski v. Phx. Constr., Ypsilon Constr. Corp., 318 F.3d 80, 87 (2d Cir. 2003) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946)). While employers are required to keep records of wages, hours and employment conditions, 29 U.S.C. § 211(c), when records are not kept, a plaintiff may meet his burden by producing "sufficient evidence to show

the amount and extent of that work as a matter of just and reasonable inference." Anderson, 328 U.S. at 687; see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citing cases) ("it is possible for a plaintiff to meet [the FLSA overtime requirements burden] through estimates based on his own recollection"); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221 (RJH)(AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (holding that when a defendant defaults and does not produce employee wage and hour records, the plaintiff's "recollection and estimates of hours worked are presumed to be correct").

Under the FLSA and NYLL, employers are required to pay their employees the overtime wage rate of one and one-half times their regular pay rate for any time over forty hours that an employee works during a week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Even when an employee's regular rate exceeds the minimum statutory requirement, overtime is required to be paid at one and one-half times the usual pay rate. Gorman v. Consol. Edison Corp., 488 F.3d 586, 595 (2d Cir. 2007) (citing Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424–25 (1945)).

GIT has not submitted records of Rodriguez's hours and wages, and Rodriguez asserts that he has not been paid for 833 hours of overtime work over the course of his employment with GIT. He bases those hours on his recollections, as well as his notes from a daily planner that he kept over the course of 2013 and 2014. He assumed a half hour break for lunch. Additionally, Rodriguez submitted a pay stub showing that he was paid at an hourly rate of $26.44 as of November 2013.

After examining Rodriguez's submissions of his contemporaneous daily planner and monthly calendars based off of his recollections, the Court finds that he was not paid for 426 hours of overtime at an hourly rate of $24.40 ($15,591.60) and 247.25 hours of overtime at an

hourly rate of $26.44 ($9,805.29), totaling $25,397.54. This number differs from the Proposed Findings of Fact and Conclusions of Law for three reasons. First, there were inconsistencies between the hours worked as reflected by Rodriguez's contemporaneous journal entries as compared to the monthly calendars that Rodriguez prepared in preparation for this litigation. For example, Rodriguez's journals have him taking a personal day on March 12, 2014, which is not reflected in the monthly calendar. The Court gave deference to the contemporaneous journal records. Second, the total hours calculated by Rodriguez included paid time off for holidays, vacation and sick time, which the Court did not include. See 29 C.F.R. § 778.216 ("since [paid time off] payments are not made as compensation for the employee's hours worked in any workweek, no part of such payments can be credited toward overtime compensation due under [the FLSA]"). Lastly, Rodriguez occasionally double counted hours worked in months where the month ended in the middle of the week, counting the hours as part of the last week of the previous month and the first week of the new month. Accordingly, Rodriguez's overtime wages equals $25,397.54.

### B.   Liquidated Damages

In addition to unpaid wages, employees may seek liquidated damages under the FLSA and NYLL. Under the FLSA, a plaintiff who is owed overtime wages may recover an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The court may, at its discretion, reduce or deny liquidated damages if the employer can show that "the act or omission giving rise to [the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. Similarly, under the NYLL, an employee is entitled to liquidated damages equal to the amount of the overtime pay "[u]nless the employer proves a good faith basis for believing that its underpayment of wages

was in compliance with the law." N.Y. Lab. Law § 198(1-a). To establish "good faith" under the FLSA, an employer must show that it took "active steps to ascertain the dictates of the FLSA and then act to comply with them." Barfield v. New York City Health and Hosp. Corp., 537 F.3d 132, 150 (2d Cir.2008) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "NYLL's willfulness standard 'does not appreciably differ' from the FLSA's willfulness standard.'" Kuebel, 643 F.3d at 366 (citing cases).

District courts are split on whether a plaintiff can recover liquidated damages under both federal and state law. Compare Paz v. Piedra, 09 Civ. 03977 (LAK)(GWG), 2012 WL 12518495, at *11 (S.D.N.Y. Jan. 12, 2012) (awarding liquidated damages only under the FLSA regime), with Tackie v. Keff Enters. LLC, 14 Civ. 2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (holding that liquidated damages can be awarded under the FLSA and NYLL). "The majority view is that recovery under both statutes is permitted because they serve different purposes. Liquidated damages pursuant to the FLSA are considered compensatory rather than punitive in nature, whereas under the NYLL they constitute a penalty to deter an employer's willful withholding of wages due." Switzoor v. SCI Engr., P.C., 11 Civ. 9332 (RA), 2013 WL 4838826, at *5 (S.D.N.Y. Sept. 11, 2013) (citations and quotation marks omitted). Most courts have concluded that a plaintiff may recover liquidated damages under both the FLSA and NYLL. See Ho v. Sim Enters., Inc., 11 Civ. 2855 (PKC), 2014 WL 1998237, at *18–19 (S.D.N.Y. May 14, 2014); Gurung v. Malhotra, 851 F. Supp. 2d 583, 593–94 (S.D.N.Y. 2012); Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725 (DC), 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261–62 (S.D.N.Y. 2008). This Court agrees that each form of liquidated damages serves a different purpose—the FLSA to compensate and NYLL to punish—and will award liquidated damages under both statutes.

Rodriguez has established that he is owed overtime wages equal to $25,397.54. Moreover, GIT has failed to provide the Court with a "good faith" basis for its failure to pay Rodriguez in accordance with NYLL. Accordingly, Rodriguez is entitled to $25,397.54 in liquidated damages under the FLSA, and $25,397.54 in liquidated damages under the NYLL. Rodriguez's total liquidated damages equal $50,795.08.

## IV.  Attorney's Fees and Costs

Finally, Rodriguez seeks to recover attorney's fees and costs. Both the FLSA and the NYLL are fee-shifting statutes, entitling a plaintiff to recover his reasonable attorney's fees and costs. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a); Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009).

Courts determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay . . . who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2007); see Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) ("In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'").[1] The "presumptively reasonable fee" equals the product of a reasonable hourly rate and a

---

[1] In Arbor Hill, the Court of Appeals for the Second Circuit called for abandoning the "lodestar" language from Hensley v. Eckerhart, 461 U.S. 424 (1983), in favor of the term "presumptively reasonable fee," which would shift the emphasis from a mechanical analysis of reasonable hourly rates to a more holistic and discretionary assessment that would allow a court's calculation of reasonable total fees to factor into the determination of reasonable hourly rates. See Arbor Hill, 522 F.3d at 190. The Supreme Court, however, issued a 2010 opinion endorsing the lodestar method and language. See Perdue v. Kenny A., 559 U.S. 542, 561 (2010) (deciding the issue in the context of 42 U.S.C. § 1988's fee-shifting provision). "In the wake of Kenny A., the Second Circuit has used the terms 'lodestar' and 'presumptively reasonable fee' interchangeably." Telebrands Corp. v. HM Imp. USA Corp., 09 Civ. 3492 (ENV)(RLM), 2012 WL 3930405, at *11 n.17 (E.D.N.Y. July 26, 2012), report and recommendation adopted, 2012 WL 3957188 (E.D.N.Y. Sept. 10, 2012) (citing Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)).

reasonable number of hours engaged in litigating the matter. See Millea, 658 F.3d at 166. Requested fees must be supported "with contemporaneous time records establishing 'for each attorney [for whom fees are sought], the date [on which work was performed], the hours expended, and the nature of the work done.'" Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Eng'rs, Local 15, 15A, 15C, 15D, AFL-CIO v. Integrated Structures Corp., 12 Civ. 436 (LGS)(KNF), 2013 WL 2649644, at *7 (S.D.N.Y. June 13, 2013), reported and recommendation adopted, 2013 WL 3684933 (July 12, 2013) (quoting NY State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

In determining the reasonable fee for a particular case, courts rely on reasonable hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience. See id. (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., 13 Civ. 2548 (KMW)(JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014). "It is the fee movant's burden to establish the prevailing market rate." Sub-Zero, Inc., 2014 WL 1303434, at *8.

Rodriguez seeks attorney's fees in the amount of $13,500 for the services provided by counsel Daniel I. Neveloff. (Ex. J ¶ 7, Supplemental Attorney Fee Letter.) Neveloff was admitted to this District in 1995 and affirms that he has been litigating civil rights cases for over twenty years. (Ex. J ¶ 4.) He submits contemporaneous time records showing that he provided twenty-seven hours of services in this matter at a rate of $500 per-hour. (Ex. J ¶ 5–7.) Neveloff does not assert that his clients have paid this rate, that a court has approved this rate, or that this rate is the prevailing rate in this district for counsel of his experience in wage-and-hour practice.

### A.  Reasonable Rate

Courts in this District have awarded a range of hourly fees—typically between $250 and $450—for employment litigation cases. See, e.g, Gurung, 851 F. Supp. 2d at 597 (citing cases) (reimbursing a partner at a large law firm, with over 30 years of "substantial experience in civil rights litigation," at a rate of $450 an hour); Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., 2014 WL 2624759, at *7 (S.D.N.Y. June 10, 2014) ("In labor and employment cases, courts in this district have approved hourly rates of $300–400 for partners"); Greene v. City of New York, 12 Civ. 6427 (SAS), 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (awarding $375 per hour to a solo civil rights practitioner); New York City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479J (JGK)(AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010) , report and recommendation adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) (finding reasonable $400 per hour for a partner in a default judgement ERISA case); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (awarding $450 per hour in fees to a Skadden Arps partner with over fifteen years of experience). Based on Mr. Neveloff's experience with civil rights and employment law cases, I find that an hourly rate of $400 is reasonable.

### B.  Reasonable Hours

"[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." Carey, 711 F.2d at 1148. The court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). In making this determination, "court[s]

should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co.,166 F.3d 422, 425 (2d Cir. 1999). In doing so, the court may make specific reductions or an across the board reduction where the number of billing entries is voluminous. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

The Court has reviewed the submitted time records and finds that most of the tasks were necessary to prosecute this action, performed within a reasonable amount of time, and are the type of work in which a reasonable attorney would engage. The Court does not believe, however, that a reasonable attorney would have engaged in various administrative tasks that Mr. Neveloff added to his time records. These include the filing of court documents and arranging for service upon the defendant, which totaled 3.25 hours. The Court therefore recommends reducing Rodriguez's attorney's fees by 3.25 hours and awarding Rodriguez $9,500 (23.75 hours at a per-hour rate of $400) in attorney's fees.

**C.     Costs**

Rodriguez also seeks $542 in court costs for filing and process server fees, which is less than or comparable to amounts awarded in other similar cases upon a default judgment. See Romita v. Anchor Tank Lines Corp., 09 Civ. 9997 (DLC), 2011 WL 1641981, at *2 (S.D.N.Y. Apr. 29, 2011) (awarding $504 in court costs for filing and process server fees); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union No. 12A v. Trade Winds Envtl., 09 Civ. 1771 (RJH)(JLC), 2010 WL 8020302, at *6 (S.D.N.Y. Dec. 23, 2010) (awarding $701.75 in court costs for filing and process server fees). The Court therefore finds that Rodriguez is entitled to $542 in court costs.

## CONCLUSION

For the foregoing reasons, I recommend that the plaintiff be awarded (1) $25,397.54 in unpaid overtime wages; (2) $25,397.54 in liquidated damages under the FLSA; (3) $25,397.54 in liquidated damages under the NYLL; (4) $9,500 in attorney fees; and (5) $542 in costs, for a total award of $86,234.62. The plaintiff is directed to serve this report upon the defendant.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         August 10, 2016

\*          \*          \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).